UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 13** |
| | : | |
| **Clarence William Lewis, Jr.,** | : | **Case No. 5:19-01873-MJC** |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| **Clarence Lewis, Jr.,** | : | |
| | : | |
| Plaintiff, | : | **Adversary Proceeding** |
| | : | **No. 5:23-00007-MJC** |
| v. | : | |
| | : | |
| **The Money Source, Inc.,** | : | |
| | : | |
| Defendant. | : | |

# O P I N I O N

## I.  INTRODUCTION

This is Plaintiff's second adversary action brought against his mortgage lender relating to certain fees and costs allegedly incurred during the course of Plaintiff's bankruptcy case. Plaintiff alleges that Defendant violated Federal Rule of Bankruptcy Procedure 3002.1(c) and seeks sanctions including attorney's fees and punitive damages.[1] Defendant moved to dismiss the Amended Complaint. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

---

[1] The Amended Complaint alleges one count for violation of Rule 3002.1(c). Given that this is a *very* discrete issue and certain aspects of this matter have already been exhaustively litigated in A 19-116 Lewis v. The Money Source, Counsel for both parties are cautioned to proceed accordingly.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the United States District Court for the Middle District of Pennsylvania dated March 11, 2016. The claim asserted in the Amended Complaint is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. §1409(a).

## III. BACKGROUND AND PROCEDURAL HISTORY

### A. The Debtor/Plaintiff's Bankruptcy Case

Clarence William Lewis, Jr. ("Debtor" or "Plaintiff") filed a Petition under Chapter 13 of the Bankruptcy Code[2] on April 30, 2019. BK Dkt. # 1.[3] Debtor's Schedules list a jointly owned home having a value of $80,000.00 and a secured claim by The Money Source, Inc. ("Defendant") in the amount of $143,551.34. *Id.*

On June 14, 2019, Defendant filed a Proof of Claim (# 7-1) in Debtor's bankruptcy case ("Claim"). The Claim indicated an amount due of $145,792.60 with arrears of $12,336.88 as of the petition date. According to the loan documents attached to the Claim, on May 23, 2014, Debtor and his mother, borrowed the original sum of $127,492.00 from Defendant ("Loan") and a mortgage lien was recorded against the real property known as 312 Church Street, Taylor, Pennsylvania ("Property").[4] On July 3, 2019, Defendant filed to the claims register a Notice of Postpetition Mortgage, Fees Expenses, and Charges ("Fee Notice"). Defendant itemized $900.00

---

[2] All code references are to Title 11 under the Bankruptcy Code.

[3] Docket entries referenced in the main bankruptcy case are designated as "BK Dkt." and in this adversary proceeding as "Dkt."

[4] Debtor's mother and co-owner of the Property, Mary Lewis, has not appeared in Debtor's main case or the related Adversary Actions.

in charges and fees incurred post-petition for review of Debtor's Plan and preparation and filing of its Claim. Defendant subsequently withdrew the Fee Notice on October 7, 2019. BK Dkt. # 41.

Debtor's First Amended Plan ("Plan") was confirmed on July 24, 2019. BK Dkt. # 38. The Plan provided for monthly payments being paid to the Chapter 13 Trustee through October 2023 totaling $19,320.00. Debtor's Plan listed a pre-petition mortgage arrearage owed to Defendant of $13,344.05. Per the Plan, Debtor was to make monthly mortgage payments to Defendant directly.

i. **Plaintiff's First Adversary Proceeding**

On November 26, 2019, Debtor commenced an adversary proceeding against Defendant by filing a Complaint at 5:19-00116-MJC ("First Adversary Action"). After considerable motion practice, Debtor filed a Third Amended Complaint on November 4, 2020. The Third Amended Complaint asserted claims against Defendant under the Real Estate Settlement Procedures Act ("RESPA") and the Truth-in-Lending Act ("TILA"). Debtor alleged, *inter alia*, that Defendant failed to timely respond to letters requesting loan information which violated RESPA and TILA. Plaintiff's claim for injuries alleged that Defendant's failure to respond caused him to incur costs and attorney's fees. Defendant denied any liability.

On March 25, 2022, the parties filed a Joint Report indicating that Plaintiff accepted a Rule 68 Offer of Judgment from Defendant in the amount of $6,000.00. The only issue remaining in the First Adversary Action is the amount of any award of Plaintiff's attorney fees and costs. On December 8, 2022, Plaintiff filed a Petition seeking attorney fees and costs of $66,678.68.[5] The parties attempted to negotiate the amount of the fees but were unsuccessful. A Court appointed

---

[5] Plaintiff's Counsel subsequently filed a further invoice seeking additional fees of approximately $16,100. The total amount of attorney's fees sought was $81,678.68.

mediator had also unsuccessfully attempted to resolve the attorney fees issue. Plaintiff's claim for attorney fees has now been briefed, argued, and is pending before the Court.

### ii. The Second Adversary Proceeding

While the First Adversary Action was pending, Plaintiff filed another complaint ("Complaint") against Defendant on January 27, 2023 ("Second Adversary Action"). The plaintiffs were Debtor and his partner, Amanda Scanlon. Plaintiffs alleged that Defendant attempted to collect certain post-petition fees and costs totaling $1,987.80, which was in violation of Fed. R. Bankr. P. 3002.1(c) because no Notice had been filed. Opening the mail and seeing these inflated charges allegedly caused Ms. Scanlon to suffer from "substantial anxiety, stress and frustration" and stress to Debtor. Compl. at ¶¶ 25-26.

Defendant moved to dismiss the Complaint asserting, *inter alia*, that Ms. Scanlon did not have standing. *See* Dkt. # 8. Plaintiff did not respond to the motion but, instead, filed an amended complaint ("Amended Complaint") on April 18, 2023 omitting Ms. Scanlon as a plaintiff. *See* Dkt. # 13. Plaintiff alleges that as a result of Defendant sending collection notices for post-petition fees and costs that were not disclosed under Rule 3002.1(c), he suffered actual damages of postage, emotional distress, attorney's fees and seeks punitive damages. *Id.* at ¶¶ 55-56.

More specifically, the Amended Complaint asserts that Plaintiff sent requests to Defendant seeking certain information, including a payoff statement on the Loan. Defendant responded with a payoff statement which appeared to include the $900 of fees from the Fee Notice that had been allegedly withdrawn, as well as the $1,087.80 of other post-petition charges. On February 8, 2023 (after commencing this action), Plaintiff's counsel sent a "Notice of Error" letter requesting that Defendant remove the $1,987.80 of fees and charges as they were being collected in violation of Rule 3002.1. *See* Am. Compl. at ¶¶ 35-36. Plaintiff further alleges that within two days of receipt

4

of the Notice of Error letter, Defendant determined that Defendant's Counsel's representation to the Court at a January 31, 2023 hearing in the First Adversary Action regarding the $900 in charges was inaccurate and subsequently sent a letter confirming the inaccuracy. *Id.* at ¶¶ 37-42. However, Plaintiff contends that Defendant did not inform this Court of its misrepresentation until March 28, 2023. *Id.* at ¶ 45.

In response to the Amended Complaint, Defendant filed its motion to dismiss ("Motion to Dismiss") on May 8, 2023. Dkt. # 15. To its Brief in support of the Motion to Dismiss, Dkt. # 18, Defendant attached a letter dated March 22, 2023, sent in response to Plaintiff's Notice of Error letter, confirming that it had corrected its error and the most recent monthly statement reflects only charges from its June 14, 2019 Proof of Claim that are not in dispute.

This matter has been fully briefed, oral argument was held on July 11, 2023, and the matter is now ripe for decision.

### IV.   LEGAL STANDARD

In the First Adversary Action, my predecessor Judge Robert N. Opel set forth the standards for reviewing a motion to dismiss:

> Federal Rule of Bankruptcy Procedure 7012(b) ("F.R.B.P.") makes Federal Rule of Civil Procedure 12(b)-(i) ("F.R.C.P.") applicable to bankruptcy adversary proceedings. F.R.C.P. 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). However, the Supreme Court heightened this pleading standard by holding that for a complaint to withstand a motion to dismiss, a claim must be more than possible, it must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L.Ed.2d 929 (2007).
>
> * * *
>
> Two years later, the Supreme Court gave further guidance as to the meaning of "facial plausibility." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.*

At the motion to dismiss stage, only well pled facts are viewed in the light most favorable to the non-moving party, in this case, the Debtor. *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 291 (3d Cir. 1988). Alternatively, legal conclusions are not assumed to be correct at the motion to dismiss stage.

* * *

The Third Circuit has also provided guidance on the differing standards regarding a complaint's alleged facts and legal conclusions at the motion to dismiss stage:

> The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Lewis v. The Money Source, Inc. (In re Lewis)*, 621 B.R. 626, 628–29 (Bankr. M.D. Pa. 2020).

This Court shall follow the same standards in reviewing Defendant's Moton to Dismiss in this proceeding.

## V. LEGAL ANALYSIS

Defendant raised several issues in its Motion to Dismiss and each will be addressed

6

below.[6] The Court will begin with a general overview of the subparts of Rule 3002.1 which are at issue.

A.   **Rule 3002.1(c) and (i)**

As stated above, Plaintiff's Amended Complaint seeks to recover damages, including punitives, for Defendant's alleged continued collection efforts of $1,987.80 in post-petition fees and costs that Defendant failed to disclose to Plaintiff, as required by Rule 3002.1(c).

By its terms, Rule 3002.1 applies in Chapter 13 cases to claims that: 1) are secured by an interest in the debtor's principal residence, and 2) the plan provides that the debtor or the trustee will make installment payments on the claim. *See* Rule 3002.1(a).

Rule 3002.1(c) imposes a noticing requirement on mortgage holders for certain fees, expenses, and other charges related to its claim. It provides:

> (c) Notice of fees, expenses, and charges. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

Fed. R. Bankr. P. 3002.1(c).

Essentially, the Rule requires a mortgage holder to file and serve upon the debtor and counsel, a notice of all post-petition fees, expenses, and charges that the mortgage holder asserts

---

[6] The Court notes that one issue was disposed of at oral argument. Defendant raised a procedural challenge to the Amended Complaint arguing that this action is premature because this adversary was commenced prior to Plaintiff completing his Chapter 13 Plan payments and his case being closed. Defendant cited to the Advisory Committee Notes to Rule 3002.1 in support of this position. Plaintiff responded that Defendant "misinterprets" the Committee Note as the Note and Rule do not preclude a Rule 3002.1 claim prior to the case being closed. At oral argument, Defendant conceded this issue on the record. Because Plaintiff has now completed his Plan payments and received his discharge, Defendant acknowledged that any procedural issue is moot. Accordingly, the Court will not address this issue.

7

are recoverable against the debtor or the debtor's principal residence.[7] Compliance with the Rule's requirements is mandatory, unless the mortgage holder has obtained relief from the stay with respect to the residence. *See In re Alvarez*, 2023 WL 5126814, at *3 (Bankr. S.D. Tex. 2023); *In re Navarro*, 2020 WL 2843033, at *3-4 (Bankr. S.D. Fla. 2020).

As the Court in *In re Dewitt* explained, "Rule 3002.1 was implemented in response to widespread challenges faced by debtors and Chapter 13 trustees in obtaining accurate information from mortgagees and mortgage servicers." 651 B.R. 215, 222 (Bankr. S.D. Ohio 2023) (citation omitted); *see also In re Lampton*, 2023 WL 2153726, at *2 (Bankr. W.D. Ky. Feb. 21, 2023) ("One of the main purposes of Rule 3002.1 is to promote transparent and timely notice of accumulated legal fees and other charges to the debtor."); *In re Lescinskas*, 628 B.R. 377, 378-79 (Bankr. D. Mass 2021) ("The purpose of the rule is to facilitate successful chapter 13 debt adjustments by promoting transparent and timely notice, thus avoiding situations where unpaid amounts accumulate to the point where, by the time a debtor is made aware of them, they are beyond his ability to pay."). It was enacted as an effort to ensure that a debtor is fully informed about the amounts he owes and is not surprised upon leaving bankruptcy. *In re Meyer*, 596 B.R. 172, 178 (Bankr. M.D. Pa. 2019) (citing *In re Formosa*, 582 B.R. 423, 427 (Bankr. E.D. Mich. 2018)). Often, "debtors completed the rigorous Chapter 13 requirements to obtain a discharge and reinstate their home mortgage only to emerge from bankruptcy and find themselves immediately facing foreclosure once again." *Dewitt*, 651 B.R. at 223 (citing *In re Pillow*, 2013 WL 10252924, at * 2 (Bankr. W.D. Mich. 2013)).

Rule 3002.1(i) contains an enforcement mechanism if a claim holder attempts to recover fees, expenses, or charges that were not disclosed under Rule 3002.1(c):

---

[7] Rule 3002.1(d) mandates that the Notice under subsection (c) be on the Official Form and be filed as a supplement to the holder's proof of claim.

>> (i) Failure to notify. If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
>>> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>>> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i).

The acceptable remedies under the sanctions provision is fairly clear-cut. Pursuant to Rule 3002.1(i)(1), the Court may preclude the mortgagee from presenting evidence of the fees, costs, or charges in any contested matter or proceeding during the case unless the failure is determined to be substantially justified or harmless. Under the second prong, the Court may award reasonable expenses and attorney's fees caused by the failure. The phrase "other appropriate relief" is somewhat ambiguous and has led courts to grant varying types of relief under this provision of the Rule, including injunctive relief and punitive damages. *See e.g., In re Blanco*, 633 B.R. 714, 754 (Bankr. S.D. Tex. 2021) (finding punitive damages are available under Rule 3002.1(i)(2)); *In re Ferrell*, 580 B.R. 181 (Bankr. D.S.C. 2017) (awarding injunctive relief). Rule 3002.1 does not require a showing of harm to be entitled to relief under the second prong. *See Blanco*, 633 B.R. at 756; *Meyer*, 2018 WL 1663292, at *12.

### B. Failure to State a Claim under Rule 3002.1

In its Motion to Dismiss, Defendant first argues that the Amended Complaint fails to state a claim under Rule 3002.1. Defendant claims that Plaintiff failed to plead that he suffered any harm from the Defendant's alleged violation of Rule 3002.1(c). More specifically, Defendant contends that Plaintiff does not allege that he paid any amounts that were included on the mortgage statement or the payoff for Corporate Advances. Defendant maintains that it has not sought to

9

collect the fees and has removed the fees and costs from the loan. Thus, according to Defendant, there is nothing further for this Court to do and the Amended Complaint must be dismissed.

Defendant further argues that emotional and punitive damages are not available under Rule 3002.1(i). Those issues will be addressed in Parts C and D, *infra*.

Plaintiff responds asserting that he has pleaded the required elements which would entitle him to relief under Rule 3002.1. Plaintiff alleged that: he petitioned for relief under Chapter 13; Defendant has a claim that is secured by an interest in Plaintiff's residence; the Plan provided that either the Chapter 13 Trustee or Plaintiff would make contractual installment payments to Defendant; Defendant is attempting to recover fees, expenses, or charges that were not disclosed within 180 days of incurring them; and Defendant should be sanctioned pursuant to Rule 3002.1(i). In support of his claim, Plaintiff attached *inter alia*, the September 11, 2020 Payoff Statement, which included $4,537.76 as a Recoverable Corporate Advance Balance, an October 26, 2020 Letter from Defendant that itemizes the $4,537.76 and shows post-petition fees and costs relating to Plaintiff's residence, and a March 15, 2023 Letter from Defendant that admits that the $900 fees were included in the Recoverable Corporate Advance Balance.

As this Court found in *Meyer*, 2018 WL 1663292, at *12 (per J. Opel), there is no requirement that a plaintiff establish harm to state a claim for relief under Rule 3002.1. A claim holder may avoid the sanction of preclusion of evidence if it can prove that the failure to notify was substantially justified or harmless but reasonable expenses and attorney's fees may be awarded regardless of whether there was harm. *See In re Beiter*, 590 B.R. 446, 456 (Bankr. S.D. Ohio 2018); *Meyer*, 2018 WL 1663292, at *12; *Blanco*, 633 B.R. at 756. Therefore, accepting the Plaintiff's allegations as true, the Court finds that Plaintiff has pleaded a plausible claim under Rule 3002.1(c). Therefore, the Motion to Dismiss for failure to state a claim will be denied.

### C. Emotional Distress Damages are Not Available under Rule 3002.1(i)(2)

As stated above, if a mortgagee violates Rule 3002.1, the Court, pursuant to Rule 3002.1(i) may, (1) preclude the holder from presenting the omitted information as evidence; and/or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure. The issue raised is whether "other appropriate relief" encompasses emotional distress damages.

Plaintiff alleged that he suffered emotional distress in the form of stress and frustration due to Defendant's efforts in collecting the improper fees. Am. Compl. at ¶ 55. Initially, Defendant argued that under Pennsylvania law, Plaintiff was not entitled to emotional or psychological damages because he had not alleged a physical harm which is a required element when asserting a claim for negligent infliction of emotion distress. Defendant contended that "[t]o state a cause of action for negligently inflicted emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of defendant's negligence." *See* Def. Brief at pp. 6-7 (quoting *Armstrong v. Paoli Memorial Hosp.*, 633 A.2d 605, 609 (Pa. Super. 1993) (citing Restatement (Second) of Torts §§§ 313, 436A)).

In his Response Brief, Plaintiff clarified that he is seeking emotional distress damages under Rule 3002.1(i) – which he further asserted is a claim under federal law not state law. *See* Pl. Brief at 3. Plaintiff then attempted to equate a claim under Rule 3002.1 to various federal consumer protection statutes which he argued do not require a showing of physical harm in order to recover damages for emotional distress. *Id.* at 3-4. In support, Plaintiff cited to cases under the Fair Debt Collection Practices Act, 15 U.S.C. §1692(b), *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* and the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq.* Plaintiff does not cite to any case holding that Rule 3002.1 is a consumer protection law.

11

Rule 3002.1(i)(2) allows the court to "award other appropriate relief" relating to the failure to give proper notice of fees under a residential mortgage loan. Several courts have determined that "other appropriate relief" does not include compensatory damages, such as damages for emotional distress. *See In re Dewitt,* 651 B.R. at 230-232 (citing cases). The *Dewitt* Court analyzed this issue and compared this language to the language contained in §362(k) which does provide a private right of action. The language of §362(k) provides that a plaintiff "shall recover actual damages." As the *Dewitt* Court concluded, "[w]hen Congress has intended to create a private right of action, it has done so expressly." *Id.* at 231.

This Court likewise finds that Rule 3002.1 does not contemplate awarding damages for personal injury claims. It is a procedural rule that provides narrow relief to provide accurate information to debtors and prevent mortgage lenders from assessing improper fees. Accordingly, Defendant's Motion to Dismiss as to Plaintiff's alleged emotional distress claim will be granted.

### D. Punitive Damages are Available under Rule 3002.1(i)(2)

Defendant also challenged Plaintiff's request for punitive damages. *See* Def. Reply Brief at 2-5. Defendant relied heavily upon the only Court of Appeals decision addressing the issue, *In re Gravel*, 6 F.4th 503 (2d Cir. 2021). Plaintiff counters that while there is no binding precedent, there is substantial persuasive authority that the term "other appropriate relief" in Rule 3002.1(i) allows for the imposition of punitive damages and is necessary to enforce the requirements of Rule 3002.1(c). *See* Pl. Brief at 11. Plaintiff cited cases in support and in opposition of this position.[8]

---

[8] At oral argument, Plaintiff claimed that Defendant improperly raised the issue of the availability of punitive damages under Rule 3002.1(i) in its Reply Brief. Plaintiff argued he did not have an opportunity to adequately respond to this argument.

In *Gravel*, the Second Circuit Court of Appeals reviewed the Bankruptcy Court's award of punitive damages pursuant to Rule 3002.1(i) for repeated violations of Rule 3002.1(c). The Second Circuit concluded that "[p]unitive sanctions do not fall within the 'appropriate relief' authorized by Rule 3002.1." *Gravel*, 6 F.4th at 515. The Court reasoned that because the phrase "'other appropriate relief' is a general phrase amid specific examples, it is best 'construed in a fashion that limits the general language to the same class of matters as the things illustrated.'" *Id.* at 515 (quoting *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003)). Since the specific forms of relief listed in Rule 3002.1(i), *i.e.,* reasonable expenses and attorney's fees, are compensatory forms of relief, the Court inferred that "other appropriate relief" is therefore limited to non-punitive sanctions. *Id.* at 515.

The dissenting opinion in Gravel disagreed with the majority reasoning that Rule 3002.1(i) does provide a proper basis to impose punitive sanctions based on the plain text of the Rule itself, as well as, the underlying purpose of the Rule and the fact that it was modeled after Rule 37 which allows for similar punitive sanctions. *Id.* at 518. As the dissent explained: "Once the evidence-preclusion penalty in Rule 3002.1(i)(1) is properly classified as a potentially punitive sanction that also operates as a deterrent, then the 'other appropriate relief' language in Rule 3002.1(i)(2)

---

Generally speaking, where a party advances new arguments in a reply brief, a court should either decline to consider the new arguments or grant an opportunity to respond. *See e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 529 n. 8 (E.D. Pa. 2010) (citing *United States ex rel. Purcell v. MWI Corp.*, 520 F .Supp. 2d 158, 166 (D. D.C.2007)). However, in this instance, Defendant alluded to the issue in its initial brief in support of the Motion to Dismiss. *See* Def. Brief at 14 ("Plaintiff has no basis for seeking punitive damages, as Rule 3002.1 provides only narrow relief. See Fed. R. Bankr. P. 3002.1(i). Even if Rule 3002.1 provided for punitive damages (it does not), the allegations in the Amended Complaint fall far short of describing the egregious and reprehensible misconduct required to warrant such relief.").

Plaintiff then addressed the issue in his Response Brief and therefore, had the opportunity to brief the issue and he also argued it at the July 11, 2023 hearing. Accordingly, the Court finds that Plaintiff had a sufficient opportunity to state his position on this issue and the Court will consider whether Rule 3002.1(i) encompasses punitive damages.

13

naturally includes, from a textual standpoint, punitive monetary sanctions because they are part of 'the same class of matters' contained within the related penalty provision." *Id.* at 522.

Several bankruptcy courts that have considered the issue have declined to follow the majority opinion in *Gravel*. *See e.g., Dewitt*, 651 B.R. 215; *Harlow v. Wells Fargo & Co. (In re Harlow)*, 2022 WL 17586716 (Bankr. W.D. Va. 2022); *In re Legare-Doctor*, 634 B.R. 453, 462 (Bankr. D.S.C. 2021); *Blanco*, 633 B.R. 714. The main rationale in favor of punitive damages that these courts cite is the need for deterrent effect. *See Dewitt,* 651 B.R. at 234 (ability of courts to award appropriate punitive damages is critical deterrent to induce mortgage holders and servicers to make systemic changes that ensure future compliance); *Harlow*, 2022 WL 17586716, at *5 (reasoning that sanctions provision of Rule would have little deterrent ability as to future violations).

Especially given the underlying purpose of Rule 3002.1, this Court believes the better approach is the broader interpretation of the Rule, and therefore, agrees with the majority of courts holding that a bankruptcy court has the discretion to award punitive sanctions under Rule 3002.1(i)(2). As the Court in *Blanco* recognized, "a creditor's failure to comply with the notice requirements of Rule 3002.1 can hinder the honest debtor's right to a fresh start following bankruptcy. Punitive damages protect that right by deterring violations of the Rule that threaten a fresh start." *Blanco*, 633 B.R. at 754. In most instances, evidence preclusion and/or the award of reasonable expenses and attorney's fees will be sufficient to remedy any failure to comply with the noticing provisions under the Rule. However, in limited situations, it is possible that punitive sanctions may be warranted. Accordingly, Defendant's Motion to Dismiss the request for punitive damages will be denied.

E.  **Defendant's Motion to Strike**

Included as part of its Motion to Dismiss, Defendant sought to strike portions of the Amended Complaint which allege that Defendant's Counsel delayed in reporting a misrepresentation to this Court in the First Adversary Action relating to Plaintiff's fee petition. Defendant believes the allegations must be stricken as immaterial, impertinent, and scandalous.

Plaintiff opposed Defendant's request to strike paragraphs 32-34 and 37-45 arguing that the allegations are not immaterial, impertinent, or scandalous and are directly relevant to Plaintiff's claim for punitive damages.

Plaintiff correctly cited the legal standard for a motion to strike. "An allegation is impertinent or immaterial if it ha[s] no possible relationship to the controversy ... and scandalous if it reflect[s] cruelly upon the [other party's] moral character, use[s] repulsive language, or detract[s] from the dignity of the court." *Donahue v. Borough of Collingdale*, 2022 WL 3577377, at *2 (E.D. Pa. 2022) (quoting *Lawrence v. City of Bethlehem*, 1998 WL 964214, at *4 (E.D. Pa. 1998)). Motions to strike are disfavored. *Donahue*, 2002 WL 3577377 at *2. At this stage of the proceeding, the Court finds that the allegations, if proven, would be relevant to any possible punitive damages that might be awarded under Rule 3002.1(i). Therefore, the Motion to Strike will be denied.

VI.  **CONCLUSION**

Based upon the above stated reasons, the Court finds that Rule 3002.1(i)(2) does not provide for emotional distress damages and therefore, Defendant's Motion to Dismiss will be granted as to that claim only. The Court further finds that Plaintiff has stated a plausible claim for relief under Fed. R. Bankr. P. 3002.1, and consequently, Defendant's Motion to Dismiss will be

15

denied as to all other claims. The Court further finds that paragraphs 32-34 and 37-45 of the Amended Complaint are relevant to Plaintiff's claim for punitive damages under Rule 3002.1(i), therefore, the Motion to Strike will be denied.

    An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: February 22, 2024